DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
CHESNOFF & SCHONFELD
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant, BERK ERATAY

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
* * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 2:22-mj-00433-VCF |
| v. | ) | |
| | ) | |
| BERK ERATAY, | ) | DATE OF HEARING: MAY 31, 2022 |
| | ) | TIME OF HEARING: 2:00 P.M. |
| Defendant, | ) | |
| _____ | ) | |

**DEFENDANT'S MOTION FOR PRETRIAL RELEASE**

COMES NOW, Defendant, BERK ERATAY (hereinafter "Mr. Eratay"), by and through his attorneys, DAVID Z. CHESNOFF, ESQ., and RICHARD A. SCHONFELD, ESQ., of the law firm of CHESNOFF & SCHONFELD and hereby move this Honorable Court for PRETRIAL RELEASE in the instant case.

///

1

This Motion for Pretrial Release is made and based upon the attached Memorandum of Points and Authorities, the attached exhibit, the argument of counsel, and any other such evidence as may be presented at the time of hearing.

Dated this 27th day of May, 2022.

    Respectfully Submitted:

    CHESNOFF & SCHONFELD

    /s/ David Z. Chesnoff
    DAVID Z. CHESNOFF, ESQ.
    Nevada Bar No. 2292
    RICHARD A. SCHONFELD, ESQ.
    Nevada Bar No. 6815
    520 South Fourth Street
    Las Vegas, Nevada 89101
    Telephone: (702)384-5563
    rschonfeld@cslawoffice.net
    dzchesnoff@cslawoffice.net
    Attorneys for Defendant, BERK ERATAY

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.      Proposed Conditions of Release:**

From the outset, Defendant Berk Eratay respectfully submits that the following conditions of pre-trial release will provide assurances to the Court that he is neither a risk of flight nor a danger to the community:[1]

- Mr. Eratay can post a signature bond supported by his residence as collateral;

- Mr. Eratay will be placed on pretrial supervision with electronic monitoring, GPS tracking, and daily reporting, and will reside in his home in Las Vegas, Nevada;

- Halis Kaya, Mr. Eratay's close friend and business partner has offered to act as a Third Party Custodian for Mr. Eratay with the understanding of his responsibility to this Honorable Court. Mr. Kaya has provided a Declaration which is attached hereto as Exhibit 1. *See infra.* Mr. Kaya has offered to reside in Mr. Eratay's residence full-time as part of his duties as a Third Party Custodian; and

- Mr. Eratay will surrender his U.S. and Turkish passports.

**B.      Procedural History:**

Mr. Eratay was arrested on or about May 24, 2022 in Las Vegas, Nevada. Mr. Eratay is charged in the United States District Court, District of Vermont, with one count of allegedly violating 18 U.S. Code § 1958.

---

[1] It should be noted that Pretrial Services has recognized that conditions can be fashioned regarding the factor of alleged flight. Accordingly, it appears that this factor is not in dispute.

According to the Indictment, the alleged offense occurred between "May 2017 to in or about February 2018." It should also be noted that the Indictment at issue is extremely vague. Furthermore, it must be noted that Mr. Eratay has been aware of the investigation in this case for several years, he has been visited by the FBI on at least two occasions, and was aware that people were arrested. Nonetheless, Mr. Eratay has never fled and has not posed any danger to the community whatsoever. He retained undersigned counsel nearly two months prior to his arrest, is in extremely good contact with undersigned counsel, and seeks to address this case responsibly and to defend against the charges.

On May 26, 2022, at Mr. Eratay's initial appearance, undersigned counsel requested that the Identity and Detention hearing be continued to May 31, 2022. The government had no objection. Mr. Eratay's Identity and Detention hearing is currently set for May 31, 2022.

### C. Mr. Eratay's Background:

Mr. Eratay was born in Istanbul, Turkey. He is a dual U.S./Turkish citizen and is lawfully present in the United States. He has a close-knit family and was raised to have a strong work ethic and compassion for others. He communicates with his family on a daily basis, and they have a loving relationship.

Mr. Eratay ultimately moved to Las Vegas in 2012. He was married in 2014 and divorced in 2019. His prior employment includes IT work and website design. He has absolutely no criminal record.

He owns his own home in Las Vegas, Nevada and has no intentions of moving from Clark County. Mr. Eratay places a high importance on self-improvement and education, and he obtained a Master's Degree related to technology. He also owns and operates several technology companies. Furthermore, he owns and operates a business called "Pizza Place" with his business partner, Halis Kaya.

Mr. Kaya, who has offered to act as a Third Party Custodian, has provided a Declaration which states in part:

> I have been friends with Berk Eratay for approximately 9 years. I met Mr. Eratay at a Turkish restaurant in Las Vegas and we quickly became great friends. It is my understanding that he has lived in Las Vegas for approximately 11 years.
>
> I am from Turkey, however, I have a United States permanent resident green card and am in the final process of becoming a United States citizen. My wife is a United States citizen and we have been married since 2014.
>
> I operate a business with Mr. Eratay, called "Pizza Place" which is located at 3231 N. Decatur, Ste 104, Las Vegas, Nevada 89130,. We have been in business since approximately January 2020.
>
> Just prior to his arrest, Mr. Eratay and I were working on a program for eating type contests in Las Vegas to broadcast on Youtube. He is valuable part of the business and also assists in technology and marketing. Prior to his arrest, we would see each other every day. I also stay at his residence several days per week as we are working on our business together.
>
> Mr. Eratay is a hard worker and dedicated to his career, businesses, and education. He has a Master's Degree, and also operates other technology businesses.
>
> Mr. Eratay is a loving and supportive friend. I have never seen him be violent with anyone in any way. He is always respectful and calm. I am very blessed to have Mr. Eratay as my friend and business partner. Mr. Eratay also has a loving relationship with his family and they communicate on a frequent basis.
>
> Mr. Eratay owns his own home in Las Vegas, Nevada, and he has always expressed to me that he does not want to relocate from Las Vegas, as he loves the community.
>
> I have never witnessed Mr. Eratay use any illegal drug. I have only witnessed him drink alcohol on very rare occasions.
>
> Mr. Eratay also has other friends in Las Vegas, including members of the Turkish community. He helps others on a regular basis, including, but not limited to, trying to help others find employment. I look up to Mr. Eratay and he is a valuable member of our community.
>
> I am willing to act as the Third Party Custodian over Mr. Eratay. I would also be willing to live in Mr. Eratay's residence full-time as part of my duties as a Third Party Custodian. My wife is supportive of this request.

> I have read the Form AO199B which I understand I would have to sign in order to act as a third party custodian over Mr. Eratay. I agree to act as a third party custodian over Mr. Eratay. I understand that I will be responsible to report to the Court or to Pretrial Services anytime that I have knowledge of Mr. Eratay violating his conditions of release and that if I fail to report any such violation I could be held in contempt of court.

*See id.*

Accordingly, it is clear that Mr. Eratay is a caring friend, dedicated business owner, has strong ties to the community, and is not a danger.

**D.     Statement of the Law:**

**I.      General Bail principles**

As the Supreme Court stated in *United States v. Salerno*, 41 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2nd 697 (1987), in the United States, liberty is the norm, and detention is the carefully limited exception. The High Court found that the Act operates only on individuals who have been arrested for particular extremely serious offenses, and carefully delineates the circumstances under which detention will be permitted. The Court found that the Act's extensive procedural safeguards are specifically designed to further the accuracy of the likelihood of future dangerousness determination.

Indisputably, the Bail Reform Act of 1984 allows a court to detain a defendant if no release conditions "will reasonably assure the appearance of the person and the safety of any other person in the community." It is only under circumstances where the court finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community, that it may be reasonably deemed appropriate to order detention of the person.

The Court also addressed the issue of risk of flight. Where the government seeks to detain someone based upon a risk of flight the court has stated that bail must be set by the court

at a sum designed to assure the goal of appearance, and no more, citing, *Stack v. Boyle*, 342 US 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

As the court reiterated in *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991), the Bail Reform Act requires release of persons under the least restrictive condition or combination of conditions that will reasonably assure appearance of the person as required and safety of community.

The factors which must be considered in determining whether there are conditions of release that will reasonably assure appearance of the person and the safety of the community are 1) nature and seriousness of the offense charged; 2) weight of evidence against defendant; 3) defendant's character; 4) physical and mental condition; 5) family and community ties; 6) past conduct; 7) history relating to drug and alcohol abuse; 8) criminal history; and 9) nature and seriousness of danger to any person or community that would be posed by defendant's release; *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

As the United States Supreme Court stated in the leading case of *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 3 (1951), fundamental Fifth and Sixth Amendment values may be irreparably compromised by pretrial detention:

> From the passage of the Judiciary Act of 1789, 1 Stat. 73 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a noncapital offense shall be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle would lose its meaning.

The Ninth Circuit, in a leading bail case, has emphatically admonished that courts "bear in mind that federal law has traditionally provided that a person arrested for a noncapital offense shall be admitted to bail," *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985),

declaring further that, "*only in rare circumstances should release be denied.*" *Id.* at 1405 (emphasis added).

Furthermore, the Second Circuit has appropriately cautioned that courts "should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987). Most significantly, as the Court held in *Motamedi*, "*[d]oubts regarding the propriety of the release should be resolved in favor of the Defendants.*" *U.S. v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) [quoting *Herzog v. United States*, 75 S.Ct. 349, 352 (1955) (Douglas J. in Chambers)](emphasis added). In fact, the *Motamedi* Court, in reference to the "Bail Reform Act" of 1984, has specifically required that pretrial detention orders must be carefully reviewed to insure that the Eighth Amendment mandate has been respected.

In *United States v. Fernandez-Alfonso*, 816 F.2d 477, 478 (9th Cir. 1987), the defendant was charged with committing an offense for which a maximum term of ten years or more is prescribed by the Controlled Substances Act. The district court made a probable cause finding which triggered the presumption stated in 18 U.S.C. section 3142(e) that no condition or combination of conditions will reasonably assure the appearance of the person as required. At the detention hearing, counsel for the defendant stated that the imposition of bail, daily reporting, monitoring drug and alcohol consumption, requiring prior approval to leave the county, and requiring the defendant to maintain employment would be reasonable alternatives to detention. The district court did not discuss the viability of any of these conditions, although it did make numerous findings demonstrating that the defendant posed a great risk of flight. *United States v. Fernandez- Alfonso*, concurring opinion by Judge Brunetti.

8

Justice Brunetti, in his concurring opinion, in *United States v. Fernandez-Alfonso* recognized that:

> A presumptively innocent defendant has a great liberty interest in avoiding pretrial detention. Thus, the district court must dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act. Because Fernandez-Alfonso attempted to rebut Section 3142(e)'s presumption ... the legislative history [of the Act] requires that the district court discuss conditional release. Its failure to do so makes its finding that no conditions could be fashioned to assure Fernandez-Alfonso's appearance error.

*Id.*

Here, conditions of bond do exist that will reasonably assure Mr. Eratay's appearance, his compliance with all court orders, and his non danger to the community at large. It must be emphasized that in enacting the "reasonably assure" standard, Congress merely "codified existing authority to detain persons who are serious flight risks." S.Rep. No.98-255, 98th Cong. 2d Sess. 4,, reprinted in 1984 U.S. Code Cong. And Admin. News, 3182, 3201. The "existing authority" at that time was exemplified by *United States v Ramirez*, 589 F. Supp. 137 (D. Minn 1984); *United States v. Schiavo*, 587 F.2d 532 (1st Cir. 1978).

Recognizing this very principle, the Court, in *United States v. Meinster*, 481 F. Supp. 1117 (S.D. Fla. 1979), held that to revoke bond based upon likelihood of flight "The United States must demonstrate by the totality of the circumstances ... that there is no reasonable assurance that the defendant will continue to appear for trial and at sentencing..." *Id.* at 1122. *See also United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985) (not only should doubts regarding the propriety of release be resolved in favor of the defendant, but that "only in rare circumstance should release be denied").

### E. THE FACTORS OUTLINED IN *MOTAMEDI* WEIGH IN FAVOR OF RELEASE:

**Nature and seriousness of the offense charged.**

As stated above, Mr. Eratay is charged with one count of allegedly violating 18 U.S. Code § 1958. According to the Indictment, the alleged offense occurred between "May 2017 to in or about February 2018." Again, it should be noted that the Indictment at issue is extremely vague, and there is no specific allegation that Mr. Eratay was the actual perpetrator of the alleged murder. Accordingly, while not making light of the allegations, the nature and seriousness of the offense weigh in favor of release on conditions.

**Weight of evidence against defendant.**

The Ninth Circuit Court of Appeals has held, the weight of the evidence is the least important factor to be considered during the pretrial detention hearing because the defendant is presumed innocent prior to trial. *See United States v. Honeyman*, 470 F.2d 473, 474 (9th Cir. 1972). This ruling guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408. "The [ ] factor may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." *Id.*; *United States. v. Armstrong*, 2010 WL 5102203 (D. Ariz 2010) (granting pretrial release to defendant charged with two separate armed bank robberies while recognizing that the evidence against the defendant was strong because bank surveillance photos show her committing the robberies and because she admitted her participation.).

Again, it is not clear what the government's evidence is, but it is respectfully submitted that when considered in conjunction with the other factors outlined here, the balance weighs in favor of release.

10

**Defendant's character, physical and mental condition.**

As outlined above, and in the Declaration of Mr. Kaya, all of Mr. Eratay's character weighs in favor of release. Mr. Eratay is also in good physical and mental health.

**Defendant's family and community ties.**

Mr. Eratay has resided in Las Vegas for over 10 years, he owns a home here, as well as several businesses. Accordingly, he has strong ties to the community and has the support of his family and friends.

**Defendant's past conduct, history relating to drug and alcohol abuse, criminal history.**

As stated above, Mr. Eratay has no prior criminal history, and there is no indication of any drug or alcohol abuse whatsoever.

**The nature and seriousness of danger to any person or community that would be posed by defendant's release.**

Here, Mr. Eratay has known about the investigation for years and has not engaged in any criminal conduct whatsoever. Any alleged concern that Mr. Eratay is a danger while on release can be adequately addressed through the imposition of certain conditions including house arrest, electronic monitoring and/or tracking through the Global Positioning System along with any other condition the Court deems necessary. Moreover, Mr. Kaya has offered to be a Third Party Custodian and can reside in Mr. Eratay's residence on a full-time basis.

## F. MR. ERATAY IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY:

Federal courts have repeatedly embraced the "strong presumption against detention" that is so ingrained in our society and granted release to defendants over the opposition of the Government. *See United States v. Hanson*, 613 F.Supp. 2d 85, 87 (D.C. 2009); *United States v. Karni*, 298 F. Supp. 2d 129 (D.C. 2004).

In both *Hanson* and *Karni*, the courts held that conditions for release could be fashioned to ensure the appearance of defendants who had no significant ties to the United States and who appeared to pose a serious danger to the United States. There, the defendant was an Israeli national who had been residing in South Africa for the last eighteen years. He was charged with violating federal law by allegedly acquiring "products that are capable of triggering nuclear weapons and [exporting] them to Pakistan, via South Africa, avoiding the requirement of obtaining an export license for the devices." *Karni*, 298 F. Supp. 2d at 130. Despite the serious nature of his crime and the fact that he "had no ties to the United States or to the Washington, D.C. area," the court determined that the defendant should be released subject to certain conditions including release into third party custody, home detention, and electronic monitoring.

In *Hanson*, the defendant was a Chinese citizen who had become a naturalized citizen of the United States. She was alleged to have illegally exported unmanned aerial vehicle ("UAV") autopilot components to the People's Republic of China. According to the government, Mrs. Hanson carried these UAV components to Germany and handed them to an acquaintance who took them to China. The government represented that these sophisticated components enable UAVs to perform certain tasks without the aid of human pilots, including autonomous take offs, bungee launches, and hand launches and landings, and that they have other tactical military uses. Moreover, according to the government's expert, UAVs equipped with these components could

be used to simulate stealth planes and cruise missiles to test air defense detection systems, and potentially could be armed. The government argued that she was a tremendous flight risk because 1) she had closer ties to China than to the United States; 2) her marital relationship in the United States was faltering, and she had no other family ties here; 3) she faced a steep jail sentence and the government had strong evidence against her; 4) it would have been easy for her to get a new Chinese passport and depart to China; 5) and she had strong business interests, family ties, and property in China. After hearing the evidence, the court found that conditions could be fashioned that would reasonably assure the defendant's presence at trial. All of these cases illustrate the type of conditions that could be fashioned in this case to ensure that Mr. Eratay attends all Court hearings and to ensure the safety of the community.

      Further, the anticipated government argument regarding danger to the community is not sufficient to overcome the long-held belief that release before trial is the norm in this society, not the exception. In several cases involving serious allegations including violent behavior by the defendant, courts have found that conditions could be fashioned that would ensure the safety of the community while the defendant was on release. *See United States v. Tolutau*, 2012 WL 113819 (D. Utah) (granting release to a 22 year old defendant charged Hobbs Act Robbery and Brandishing a Firearm); *United States v. Youngblood*, 2009 WL 773539 (N.D. Cal. 2009) (granting pretrial release to defendant charged with bank robbery despite previous convictions for possession/sale of cocaine base, reckless driving and theft); *United States v. Conway*, 2011 WL 3421321 (N.D. Cal. 2011) (granting release to a twenty-one year old defendant with no steady employment history and who had a history of using marijuana). The defendant in *Conway* had what the court described as "a significant criminal record," which included a conviction for felony accessory to robbery.

In granting release, the court found that the nature of the charge and the weight of the evidence raised a serious concern as to whether the defendant posed a danger to the community.

However, the court noted that "the ultimate question is not whether he presents a danger to the community, but rather, whether such a risk is mitigable through the imposition of conditions of release." *Id.* at *3; *see also United States v. Barnett*, 986 F.Supp. 385, 392 (W.D. La. 1997) (granting pretrial release for defendants charged with attempted murder for hire and conspiracy to commit murder for hire); *U.S. v. Torres-Rosario*, 600 F.Supp.2d 327 (D. Puerto Rico 2009) (finding that a defendant in a capital prosecution for conspiracy to commit carjacking, aiding and abetting carjacking, and using a firearm in perpetuation of vehicle theft and murder, rebutted the Bail Reform Act's presumption that no conditions of release would assure his appearance and the safety of others, and thus, was entitled to release).

Given the number and types of pretrial release conditions that can be imposed by this Court, it is clear that any concerns can be adequately addressed without the need for pretrial detention.

Again, it should also be noted that Mr. Eratay is dual-citizen who is lawfully in the United States. As such, it is respectfully submitted that his dual citizenship should not be a concern for this Honorable Court, and Pretrial Services has recognized that conditions can be fashioned regarding the factor of alleged flight. Nonetheless, it should be noted that it is well-settled that Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings. *See* 18 U.S.C. § 3142(a)(3) and (d). *See Castro-Jnzunza*, No. 12-30205, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012); United States v. Adomako, 150 F.Supp.2d 1302, 1304 (M.D.Fla.2001) ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings."); *United States v. Montoya-Vasquez*, 2009 WL 103596,4 (D. Neb. Jan. 13, 2009); *United States v. Villanueva Martinez*, 707

F. Supp. 2d 855, 858 (N.D. Iowa 2010) (holding that pending immigration proceedings are too speculative to evidence of non-appearance (citing *Montoya Vasquez*)); *United States v. Marinez-Patino*, 2011 WL 902466, 6 (N.D. lll. Mar. 14, 2011) (rejecting the use of an ICE detainer as part of the risk of flight analysis because it did not create a risk of defendant fleeing, and deportation is not among the statutory factors for bail in § 3142(g)); *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001); *United States v. Perez*, 2008 WL 4950992 (D. Kan. 2008) (ordering release in spite of detainer); *United States v. Castro-Inunza*, 2012 WL 1697401,7-8 (D. Ore. May 14, 2012), *rev'd United States v. Castro-Inunza*, No. 12-30205, slip op. at 2 (9th Cir. July 23, 2012); *U.S. v. Trujillo-Alvarez*, 900 F.Supp.2d 1167, 1180 (D. Or. Oct. 29, 2012) (ordering release in spite of both an immigration detainer and a reinstatement of removal order). *See also United States v. Xulam*, 84 F. 3d 441, 444 (D.C. Cir. 1996) (ruling that because the government had never moved for temporary detention under § 3142(d), they could not then later argue for detention because of possible deportation).

Courts have even rejected a detainer as evidence supporting pre-trial detention because that would amount to a per se rule against release for anyone subject to an ICE detainer. For example, in *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009), the court ordered the defendant to be released from custody in spite of the detainer.

Also, in *United States v. Montoya-Vasquez*, the District Court of Nebraska combined these concerns about the speculative nature of deportation proceedings and the impropriety of a per se rule against bail for defendants with an ICE detainer:

> If the court could consider as determinative the speculative probabilities that a defendant would be removed from this country by ICE once he is placed in ICE custody, it would effectively mean that no aliens against whom ICE places detainers could ever be released on conditions. Such a harsh result is nowhere expressed or even implied in the Bail Reform Act ... If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not.

> Further, had Congress barred aliens against whom immigration detainers are filed from eligibility for release on conditions, such action would raise serious Constitutional issues, not the least of which would be claims of excessive bail, violation of equal protection of the laws, and violation of the separation of powers.

*Montoya-Vasquez*, 2009 WL 103596 at 5.

As such, courts in the Ninth Circuit's jurisdiction have the authority to release a defendant on bail even if there is an ICE hold. *See also, e.g., United States v. Luna-Gurrola*, No. 2:07-mj-01755, Dkt 24, 15 (C.D. Cal. Nov. 20, 2007); *Castro-Jnzunza*, No. 12-30205, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012).

The Ninth Circuit has consistently held that "[o]nly in rare cases should release be denied." *Townsend*, 897 F.2d at 994. Moreover, "Doubts regarding the propriety of release are to be resolved in favor of defendants." *Id.* Here, there is no doubt that Mr. Eratay should be released on bail with conditions.

## G. CONCLUSION:

In light of the foregoing, Mr. Eratay offers the following bail proposal:

- Mr. Eratay can post a signature bond supported by his residence as collateral;

- Mr. Eratay will be placed on pretrial supervision with electronic monitoring, GPS tracking, and daily reporting, and will reside in his home in Las Vegas, Nevada;

- Halis Kaya, Mr. Eratay's close friend and business partner has offered to act as a Third Party Custodian for Mr. Eratay with the understanding of his responsibility to this Honorable Court. Mr. Kaya has provided a Declaration which is attached hereto as Exhibit 1. See infra. Mr. Kaya has offered to reside in my Mr. Eratay's residence full-time as part of his duties as a Third Party Custodian;

- Mr. Eratay will surrender his U.S. and Turkish passports.

The Bail Reform Act requires that in a pretrial posture, the Government bears the burden of proving that a defendant poses a risk of flight and/or a danger to the community that cannot be mitigated through the imposition of conditions of release. If the government does not meet its burden, the Court's duty is to fashion appropriate conditions that permit the defendant to remain out of custody during the preparation of his or her defense, while safeguarding against flight or community danger.

As stated herein, it is respectfully submitted that this is not an irrebuttable presumption case, and Mr. Eratay has submitted sufficient evidence to support that conditions can be fashioned that would assure his appearance at trial and the safety of others.

DATED this 27th day of May, 2022.

Respectfully Submitted:

CHESNOFF & SCHONFELD

/s/ David Z. Chesnoff
DAVID Z. CHESNOFF, ESQ.
Nevada Bar No. 2292
RICHARD A. SCHONFELD, ESQ.
Nevada Bar No. 6815
520 South Fourth Street
Las Vegas, Nevada 89101
Telephone: (702)384-5563
rschonfeld@cslawoffice.net
dzchesnoff@cslawoffice.net
Attorneys for Defendant, BERK ERATAY

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of May, 2022, I caused the forgoing document to be filed electronically with the Clerk of the Court through the CM/ECF system for filing; and served on counsel of record via the Court's CM/ECF system.

_____
Employee of Chesnoff & Schonfeld